1

2                                                    **E-Filed 3/29/07**

3

4

5

6

7                              NOT FOR CITATION

8             **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE NORTHERN DISTRICT OF CALIFORNIA**

10                           **SAN JOSE DIVISION**

11

12   MARY ANN SALMON,                    Case Number C 06-2111 JF

13                Plaintiff,             ORDER[1] DENYING PLAINTIFF'S
                                         MOTION FOR SUMMARY
14        v.                             JUDGMENT; AND GRANTING
                                         DEFENDANT'S CROSS-MOTION
15   JO ANNE B. BARNHART, Commissioner of   FOR SUMMARY JUDGMENT
     Social Security,
16
                Defendant.
17                                       [Re:  Doc. Nos. 9, 10 ]

18

19

20        Plaintiff Mary Ann Salmon ("Salmon") filed this action on March 21, 2006, seeking

21   reversal or remand of Defendant's decision to deny her request for disability income benefits.

22   Plaintiff filed a motion for summary judgment on July 16, 2006. Defendant filed a cross-motion

23   for summary judgment on August 11, 2006. Plaintiff filed a reply on August 17, 2006. The

24   matter was submitted without oral argument. For the reasons discussed below, Plaintiffs motion

25   will be denied, and Defendant's motion will be granted.

26

27   ─────────────────

28        [1] This disposition is not designated for publication and may not be cited.

# I. BACKGROUND

The following facts are taken from the decision of the Administrative Law Judge ("ALJ") dated October 4, 2005, and the accompanying administrative record. Salmon is sixty-one years old with more than a high school education. A. R. at 17. Her work experience includes employment as an office manager, a leasing agent, and a marketing coordinator. *Id.* Salmon alleges that she became disabled on May 5, 2003, as a result of status post cervical fusion, lumbar degenerative disc disease, major depression, and post traumatic stress disorder. *Id.* On September 8, 2003, she applied for disability insurance benefits. *Id.* at 16. Her application was initially denied on November 25, 2003, *Id.* at 25, and denied again after reconsideration on June 7, 2004. *Id.* at 30. Pursuant to Salmon's request, the ALJ held an administrative hearing on December 7, 2004. *Id.* at 47. Salmon, who was represented by counsel, testified at the hearing, as did vocational expert Scott Simon.  *Id.* at 250-85.

After reviewing all of the evidence, the ALJ found that Salmon is not disabled within the meaning of the Social Security Act and therefore not entitled to disability or disability insurance benefits. *Id.* at 16. Specifically, the ALJ found that Salmon had not engaged in substantial gainful activity since the alleged onset of her disability. *Id.* at 20. Further, although the ALJ found that Salmon's chronic back pain is "severe" based upon the requirements in 20 C.F.R. § 404.1520(c), her medical impairment, does not meet or medically equal one of the listed impairments in Appendix 1, Subpart P, Regulation No. 4. *Id.* The ALJ also found that Salmon's allegations regarding her limitations were not totally credible. *Id.* Salmon had excellent results from the cervical fusion in 2003, and has not seen a doctor since September, 2003. *Id.* at 19. Although Salmon was disabled for several months after a car accident in May 2003, the medical evidence indicates that she recovered fully . *Id.* Although Salmon complained of back pain, she received no treatment for it. *Id.* The ALJ found that Salmon's medically determinable chronic back pain does not deprive her of the residual functional capacity to perform the full range of sedentary work.  *Id.*

The ALJ also found that there is little medical evidence to support Salmon's allegation that she has a severe mental impairment or that her impairments are so severe as to meet or equal

1  an impairment in the Listing. *Id.* at 18.  Salmon has not taken psychotropic medication, and has

2  never sought therapy from a mental health professional.  *Id.* Although Salmon was depressed and

3  tearful during a psychiatric evaluation, the ALJ found that she could perform work activities on a

4  regular basis. *Id.*

5       The ALJ stated that Salmon's claimed symptoms exceeded what reasonably could  be

6  expected based on the medical evidence of record. Accordingly, Salmon was found to have the

7  residual functional capacity to perform sedentary work. *Id.* at 19.  Moreover, Salmon's past

8  relevant work  as an office manager, leasing agent, and marketing coordinator do not require

9  performance of work-related activities precluded by her residual functional capacity pursuant to

10  20 CFR § 404.1565. *Id.* at 21. Ultimately, the ALJ concluded that Salmon was not under a

11  "disability" as defined in the Social Security Act and therefore not entitled to disability or

12  disability insurance benefits. *Id.*

13       In October 2005, Salmon requested an administrative review of the ALJ's decision by the

14  Appeals Council. Her request was denied, and the ALJ's decision thus became final. Salmon

15  then commenced the instant action pursuant to 42 U.S.C. § 405 (g).

16                                       **II. LEGAL STANDARDS**

17  **A.       Standard for Reviewing the Commissioner's Decision**

18       Pursuant to 42 U.S.C. § 405(g), this Court has the authority to review the

19  Commissioner's decision to deny benefits.  The Commissioner's decision will be disturbed only

20  if it is not supported by substantial evidence or if it is based upon the application of improper

21  legal standards. *Moncada v. Chater*, 60 F.3d 521, 523 (9th Cir. 1995); *Drouin v. Sullivan*, 966

22  F.2d 1255, 1257 (9th Cir. 1992).  In this context, the term "substantial evidence" means "more

23  than a mere scintilla but less than a preponderance - it is such relevant evidence that a reasonable

24  mind might accept as adequate to support the conclusion." *Moncada*, 60 F.3d at 523; *see also*

25  *Drouin*, 966 F.2d at 1257.  When determining whether substantial evidence exists to support the

26  Commissioner's decision, the Court examines the administrative record as a whole, considering

27  adverse as well as supporting evidence. *Drouin*, 966 F.2d at 1257; *Hammock v. Bowen*, 879 F.2d

28  498, 501 (9th Cir. 1989).  Where evidence exists to support more than one rational interpretation,

1   the Court must defer to the decision of the Commissioner.  *Moncada,* 60 F.3d at 523; *Drouin*,

2   966 F.2d at 1258.

3   **B.    Standard for Determining Disability**

4          A person is "disabled" for purposes of receiving Social Security benefits if he or she is

5   unable to engage in any substantial gainful activity due to a physical or mental impairment which

6   is expected to result in death or which has lasted or is expected to last for a continuous period of

7   at least twelve months.  42 U.S.C. § 423(d)(1)(A); *Drouin*, 966 F.2d at 1257.  The Commissioner

8   follows a five-step sequential evaluation process in assessing whether a claimant is disabled.  20

9   C.F.R. §§ 404.1520, 416.920; *Lester v. Chater*, 81 F.3d 821, 828 n.5 (9th Cir. 1995).  In the first

10  step, the Commissioner must determine whether the claimant currently is engaged in substantial

11  gainful activity; if so, the claimant is not disabled and the claim is denied.  *Id.*  If the claimant is

12  not currently engaged in substantial gainful activity, the second step requires the Commissioner

13  to determine whether the claimant has a "severe" impairment or combination of impairments

14  which significantly limits the claimant's ability to do basic work activities; if not, a finding of

15  "not disabled" is made and the claim is denied.  *Id.*  If the claimant has a "severe" impairment or

16  combination of impairments, the third step requires the Commissioner to determine whether the

17  impairment or combination of impairments meets or equals an impairment in the Listing; if so,

18  disability is conclusively presumed and benefits are awarded.  *Id.*  If the claimant's impairment or

19  combination of impairments does not meet or equal an impairment in the Listing, the fourth step

20  requires the Commissioner to determine whether the claimant has sufficient "residual functional

21  capacity"[2] to perform his or her past work; if so, the claimant is not disabled and the claim is

22  denied.  *Id.*  The plaintiff has the burden of proving that he or she is unable to perform past

23  relevant work.  *Drouin*, 966 F.2d at 1257.  If the claimant meets this burden, a *prima facie* case

24  of disability is established.  The Commissioner then bears the burden of establishing that the

25  claimant can perform other substantial gainful work; the determination of this issue comprises

26

27          [2]A claimant's residual functional capacity is what he or she can still do despite
    existing exertional and nonexertional limitations.  *Cooper v. Sullivan*, 880 F.2d 1152,
28  1155 n.5 (9th Cir. 1989).

1  the fifth and final step in the sequential analysis.  20 C.F.R.§§ 404.1520, 416.920; *Lester*, 81

2  F.3d at 828 n.5; *Drouin*, 966 F.2d at 1257.

3  <center>**III. DISCUSSION**</center>

4  Salmon asserts several challenges to the ALJ's decision.  First, she argues that the ALJ

5  improperly assessed her residual functional capacity in concluding that she could perform her

6  past relevant work. Second, she argues that the ALJ failed to consider the diagnosis of Dr.

7  Ronald S. Greenwald, her treating orthopedic surgeon, and Dr. Lara A. Salamacha, her

8  consultative examining orthopedist. Third, Salmon argues that the ALJ erred in not finding her

9  mental impairment - depression - to be severe.

10  **A.    ALJ's Assessment of Plaintiff's Residual Functional Capacity**

11  Salmon contends that the ALJ failed accurately to assess her residual functional capacity

12  and thereby found incorrectly that she could perform her past relevant work as an office manager.

13  The plaintiff bears the initial burden of establishing disability by showing that a physical or

14  mental impairment prevents her from engaging in any of her previous occupations. *Sanchez v.*

15  812 F.2d 509, 511 (9th Cir. 1989), *Allen v. Sec'y of HHS.*, 726 F.2d 1470, 1472 (9th Cir. 1984).

16  In assessing a claimant's residual functional capacity, the ALJ must assess all evidence, including

17  the claimant's medical reports, to determine what capacity the claimant has for work despite her

18  impairment(s). 20 C.F.R. § 404.1545(a).  The ALJ may resolve disputes in contradicted medical

19  evidence. *Magallanes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989);*Vincent ex rel. Vincent v.*

20  *Keckler*, 739 F.2d 1393, 1395 (9th Cir. 1984).

21  Here, the ALJ considered all of the medical evidence in the record before determining

22  that Salmon has the residual functional capacity to work in her past relevant work as an office

23  manager. In assessing Salmon's alleged mental impairment, the ALJ considered the November

24  11, 2004, psychological evaluation by David H. Silverman, Ph.D, characterizing Salmon as

25  "profoundly depressed." A.R. 220-23. The ALJ also considered the contradicting report of the

26  Disability Determination Services  ("DDS") consultative examiner, who concluded that Salmon

27  did not have a psychiatric disorder. *Id.* at163-66. The latter report indicated that Salmon has

28  never taken psychotropic medication and had never sought therapy with a mental health

<center>5</center>

1   professional. *Id.* at 164.

2       In assessing Salmon's physical impairment, the ALJ considered Dr. Greenwald's note

3   dated August 21, 2003, which stated that Salmon returned for her second "postop" visit, that

4   she was "doing extremely well status post C5 to C7 anterior cervical discectomy and fusion," and

5   that "she feels great regarding her neck and arm. No complaints at all. No numbness or tingling

6   and no neck pain. Her only complaint is chronic low back pain without radiation." *Id.* at 132.

7   The ALJ also considered the December 16, 2004, diagnosis by Dr. Greenwald that Salmon had a

8   low back pain with bilateral lumbar radiculopathy, the May 4, 2004, x-ray evaluation by Jack

9   Henry, D.C., and Dr. Salamacha's consultative examination of Salmon's back pain. Dr.

10  Salamacha opined that Salmon could stand or walk in fifteen to twenty minute intervals as

11  tolerated with ten minutes of rest between intervals and use of a cane; could lift ten pounds

12  frequently and twenty pounds occasionally; could perform no bending, stooping or crouching;

13  could perform overhead reaching bilaterally; and could perform frequent table top handling,

14  feeling, fingering and grasping up to ten pounds.  In addition to these medical reports, the ALJ

15  also considered Salmon's testimony from the hearing that she is in pain at all times and that she

16  has emotional problems.

17      Salmon contends that the ALJ's discussion of the medical and non medical evidence

18  noted above did not comport with Social Security Ruling 96-8p ("SSR 96-8p"), which requires

19  the adjudicator to provide a narrative description of how the evidence supports the residual

20  functional capacity.  Specifically, Salmon contends that the ALJ failed to provide a rationale for

21  his findings and failed to consider whether Salmon had the ability to sustain work activity on a

22  regular and continuous basis despite her back pain problems. These contentions are not supported

23  by the record. It is clear from his decision that the ALJ reviewed all of  the probative medical and

24  non-medical evidence in the record. The ALJ complied with SSR 96-9p, and his determination is

25  supported by substantial evidence. The ALJ made several specific findings as to Salmon's

26  functional capacity. First, the ALJ listed and contrasted the opinion of Dr. Silverman against the

27  evidence of the DDS consultative examiner. Based on this analysis, the ALJ concluded that

28  Salmon did not have a severe psychiatric impairment. Second, after summarizing the medical

6

1   evidence with respect to Salmon's physical condition,  the ALJ explained why he believed

2   Salmon's testimony was not entirely credible. A.R. at 19. In particular, the ALJ found that

3   Salmon's claimed symptoms exceed what reasonably could be expected based on the objective

4   medical evidence. *Id.* The ALJ found no objective medical support in the record for Dr.

5   Greenwald's opinion that Salmon is limited to less than a full range of sedentary work. *Id.*  The

6   ALJ considered the x-ray evaluation and determined that it was specific for chiropractic

7   treatment and otherwise only revealed mild findings which are little more than mild spondylosis.

8   *Id.* Then, giving weight to Salmon's low back pain symptoms, and acknowledging the vocational

9   expert's testimony that Salmon's past relevant work as an office manager was light skilled as

10  Salmon performed it, the ALJ concluded that Salmon retains the residual functional capacity to

11  perform the full range of sedentary work. Substantial evidence thus supports the ALJ's

12  determination that Salmon retained the residual functional capacity to perform her "past relevant

13  work as office manager as generally performed in the national economy."

14  **B.**   **ALJ's Consideration of Examining and Treating Sources**

15        Salmon's second argument is that the ALJ failed to properly consider the opinions of her

16  treating and examining physicians.

17        **1.**   **ALJ's consideration of Dr. Greenwald's Opinion**

18        Greater weight usually is given to the opinion of a treating physician. *Batson v.*

19  *Commissioner of Social Security Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) (citing *Matney v.*

20  *Sullivan*, 981 F.2d 1016, 1019 (9th Cir. 1992)). However, a treating physician's opinion is not

21  always binding, and in the case of a conflict, the "ALJ must give specific, legitimate reasons" for

22  disregarding a treating physician's opinion.  *Id.*

23        Here, Dr. Greenwald is Salmon's primary treating physician. As noted above, The ALJ

24  expressly considered Dr. Greenwald's findings and conclusions.  The ALJ observed that on July

25  3, 2003, Dr. Greenwald noted that Salmon is "doing extremely well status post CS to C7 anterior

26  cervical discectomy and fusion" and that "she has absolutely no numbness or tingling and no

27  pain and no weakness whatsoever. The only pain is in the left low back." A.R. at 18.  The ALJ

28  also cited Dr. Greenwald's opinion dated December 16, 2004, that Salmon could perform "less

7

than sedentary work," and that Dr. Greenwald had diagnosed Salmon with chronic low back pain. *Id.* The ALJ concluded expressly that Dr. Greenwald's diagnosis was "not supported by examination findings of longitudinal treatment records." *Id.* at 19. The ALJ also found that the x-ray evaluation was for specific chiropractic treatment and that it revealed only mild findings. Accordingly, the ALJ adequately explained his basis for giving little weight to the treating physician's opinion.

### 2.   ALJ's consideration of Dr. Salamacha's Opinion

The opinion of an examining physician is entitled to greater weight than the opinion of a nonexamining physician. *See Lester v. Charter*, 81 F.3d 821, 830 (9th Cir. 1995), *as amended* April 9, 1996, *Andrews v. Shalala*, 53 F.3d 1035, 1040-41 (9th Cir. 1995). Where the opinion of an examining physician is not contradicted, it may be rejected for "clear and convincing" reasons. *Lester*, 81 F.3d at 830; *Andrews*, 53 F.3d at 1041-42. Where the opinion of an examining physician is contradicted by another opinion, it may be rejected for "specific and legitimate" reasons supported by substantial evidence in the record. *Lester*, 81 F.3d at 830-31; *Andrews*, 53 F.3d at 1042-43. The opinion of a nonexamining physician, standing alone, will not constitute substantial evidence justifying rejection of the opinion of either a treating or examining physician. *Lester*, 81 F.3d at 831; *Andrews*, 53 F.3d at 1042-43. Nevertheless, a nonexamining physician's opinion may constitute substantial evidence if it is supported by other evidence in the record. *Lester*, 81 F.3d at 831; *Andrews*, 53 F.3d at 1042-43.

Here, Dr. Salamacha performed a consultative examination on March 18, 2005. Based on her examination, Dr. Salamacha concluded that Salmon could occasionally lift twenty pounds and frequently lift ten pounds, and determined that sitting was not affected by any impairment. Dr. Salamacha also opined that Salmon could only stand and/or walk between two to six hours in an eight hour workday. This inability to stand and/or walk for a full workday places Salmon in the sedentary occupation category. See 20 CFR § 404.1567 and Social Security Ruling 83-10.

The ALJ contrasted Dr. Salamacha's opinion with the opinion of the DDS nonexamining medical expert that Salmon could perform light work. That nonexamining report was not supported by any other evidence in the record and thus did not justify rejection of Dr.

1    Salamacha's examining opinion. Therefore, giving weight to Salmon's back pain symptoms and

2    consistent with Dr. Salamacha's diagnosis, the ALJ properly concluded that Salmon retains the

3    residual functional capacity to perform the full range of sedentary work, not light work.

4    **C.      ALJ's Finding of a "non-severe" Depression Impairment**

5         Salmon's final argument is that the ALJ erred in concluding that her depression was a

6    non-severe impairment.  The ALJ noted that Dr. Silverman's psychological evaluation referred to

7    Salmon as "profoundly depressed." The ALJ found that Dr. Silverman's report was not supported

8    by any other evidence. Moreover, the report was directly contradicted by the DDS consultative

9    examiner's report. The ALJ also found it noteworthy that Salmon had not taken any psychotropic

10   medication, had never sought therapy with a mental health professional, and had never been

11   hospitalized for psychiatric reasons. The consultative examiner stated that Salmon was

12   depressed, but that she could perform work activities on a regular basis. In light of the deference

13   to which the ALJ's factual findings are entitled, the record here provides adequate support for the

14   ALJ's determination that Salmon's psychiatric impairments have no more than a minimal effect

15   on her ability to function. *Corrao v. Shalala*, 20 F.3d. 943, 949 (9th Cir. 1994).

16                                        **IV. ORDER**

17        (1) Plaintiff's motion for summary judgment is DENIED;

18        (2) Defendant's cross-motion for summary judgment is GRANTED; and

19        (3) The Clerk of the Court shall close the file.

24   DATED:  3/29/07

26   _____
     JEREMY FOGEL
     United States District Judge

9

1   This Order was served on the following persons:

2

3   Jaime Luna Preciado     jaime.preciado@ssa.gov

4   Kevin Charles Thurber     thurberlaw@sbcglobal.net

5   Sara Winslow     sara.winslow@usdoj.gov, kathy.terry@usdoj.gov; claire.muller@usdoj.gov

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. C 06-2111 JF
ORDER DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT ETC.
(RSEX)